**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
7095 Indiana Ave Ste 200
Riverside, CA 92506
(951) 682-9311
E-mail: tpacker@grechpackerlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY HAMIL<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN BERNARDINO; SEAN BYRNE; GAETANO NICASSIO; RYAN NERENBERG; ALEX COLLIS; ERIC ROSE; and DOES 1-10, inclusive,<br><br>Defendants. | CASE No.:  5:24-cv-2025<br><br>**COMPLAINT FOR DAMAGES**<br>1. 42 U.S.C. § 1983 (Unreasonable Search and Seizure – Excessive Force)<br>2. 42 U.S.C. § 1983 (Municipal Liability – Ratification)<br>3. 42 U.S.C. § 1983 (Municipal Liability – Inadequate Training)<br>4. 42 U.S.C. § 1983 Municipal Liability – Unconstitutional Custom, Practice, or Policy)<br><br>**DEMAND FOR JURY TRIAL** |

1

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

## COMPLAINT FOR DAMAGES

COMES NOW, PLAINTIFF GREGORY HAMIL, for his complaint against DEFENDANTS COUNTY OF SAN BERNARDINO, SEAN BYRNE, GAETANO NICASSIO, RYAN NERENBERG, ALEX COLLINS, ERIC ROSE, and DOES 1-10, inclusive, and hereby alleges as follows:

## INTRODUCTION

1.      This civil rights and state tort action arises out of the January 9, 2023, use of excessive and unreasonable force, including deadly force, on PLAINTIFF GREGORY HAMIL by Defendant Deputies SEAN BYRNE, GAETANO NICASSIO, RYAN NERENBERG, ALEX COLLINS, ERIC ROSE, and DOES 1-6, all of whom are COUNTY OF SAN BERNARDINO Sherriff's Deputies. PLAINTIFF seeks compensatory damages, punitive damages, attorneys' fees, and costs from Defendants for violating various rights guaranteed to PLAINTIFF by the Bill of Rights, and the United States Constitution.

2.      Defendants SEAN BYRNE, GAETANO NICASSIO, RYAN NERENBERG, ALEX COLLINS, ERIC ROSE, and Does 1-10, inclusive, caused various injuries by directly striking PLAINTIFF, who was not an immediate threat of death or serious bodily injury as described herein, and/or by integrally participating or failing to intervene in the use of excessive and unreasonable force used against PLAINTIFF.

3.      This action is in the public interest as PLAINTIFF seeks by means of this action to hold accountable those responsible for the serious bodily injury inflicted by Defendants.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

**THE PARTIES**

4.     At all relevant times, PLAINTIFF GREGORY HAMIL was an individual residing in the County of San Bernardino, California.

5.     At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department ("SBCSD") and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the SBCSD and its employees and agents complied with the laws of the United States and of the State of California.

6.     At all relevant times, COUNTY was the employer of Defendant Deputies BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOES 1-10, inclusive. As set forth below, PLAINTIFF alleges that Defendant COUNTY is directly liable for compensatory damages under federal law pursuant to *Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978) and its progeny. PLAINTIFF further alleges that Defendant COUNTY is vicariously liable for compensatory damages under PLAINTIFF'S state law claims, given Plaintiff's allegations that the officers who committed the acts and omissions complained of herein were acting in the course and scope of their employment at the time that the acts and omissions occurred. PLAINTIFF makes no claim for punitive damages against the Defendant COUNTY.

7.     At all relevant times, Defendants SEAN BYRNE ("BYRNE"), GAETANO NICASSIO ("NICASSIO"), RYAN NERENBERG

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

("NERENBERG"), ALEX COLLINS ("COLLINS"), and ERIC ROSE ("ROSE"), were duly appointed COUNTY Sheriff's Deputies and/or employees or agents of COUNTY, subject to the oversight and supervision of COUNTY'S elected and non-elected officials.

8.    At all relevant times, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, and ROSE acted under color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY, the SBCSD, and under the color of the statutes and regulations of the State of California.

9.    At all relevant times, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, and ROSE acted within the course and scope of their employment as COUNTY Sheriff's Deputies.

10.    On information and belief, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, and ROSE used excessive and unreasonable deadly force against PLAINTIFF.

11.    At all relevant times, Defendants DOES 1-6 ("DOE DEPUTIES") were Sheriff's Deputies for the SBCSD, including but not limited to patrol deputies, crisis negotiation deputies, corporals, sergeants, field training officers, dispatchers, and other deputies and agents of SBCSD. DOE DEPUTIES were acting under color of law within the course and scope of their duties as deputies for the SBCSD. DOE DEPUTIES were acting with complete authority and ratification of their principal, Defendant COUNTY.

12.    Defendants DOES 7-10 ("DOE SUPERVISORS") are supervisory officers, officials, agents, and/or employees for the SBCSD who were acting under color of law within the course and scope of their duties as officials for the SBCSD. DOE SUPERVISORS were acting with complete authority and ratification of their principal, Defendant COUNTY.

4

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

Defendants DOE SUPERVISORS are managerial, supervisorial, and policymaking employees of the SBCSD who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the SBCSD. DOE SUPERVISORS were acting with complete authority and ratification of their principal, Defendant COUNTY.

13. The true names and capacities, whether individual, corporate, association, or otherwise, of Defendants DOES 1-10, inclusive, are unknown to PLAINTIFF, who otherwise sues these Defendants by such fictitious names. PLAINTIFF will seek leave to amend this complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the conduct or liabilities alleged.

14. At all relevant times mentioned herein, each and every Defendant was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

15. All the acts complained of herein by PLAINTIFF against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Also, Defendants and their agents ratified all the acts complained herein.

16. All Defendants who are natural persons, including Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOES 1-10, inclusive, are sued in their individual capacity, and punitive damages are

only being requested as to these Defendants only, and not Defendant COUNTY.

## JURISDICTION AND VENUE

17.    The Court has jurisdiction over Plaintiff's claims pursuant to 28 28 U.S.C. §§1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourth Amendment of the United States Constitution.

18.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

19.    PLAINTIFF repeats and re-alleges each and every allegation of paragraphs 1 through 20, inclusive, as if fully set forth herein.

20.    PLAINTIFF sustained injuries, including but not limited to pain and suffering, when Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES used excessive and unreasonable force against him, in deliberate indifference to PLAINTIFF's rights, and employed negligent tactics, including when they savagely beat PLAINTIFF by punching, kicking, and stomping on him.

21.    On January 9, 2023, at approximately 1:12 p.m., at or around the 1400 block of Marshall St in Redlands, County of San Bernardino, California, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES used excessive and unreasonable force, including deadly force, against Plaintiff HAMIL.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

22. The use of force against PLAINTIFF HAMIL by Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES was excessive and unreasonable because at the time force was used, PLAINTIFF was not an immediate threat of death or serious bodily injury to any person. No deadly force warning was given prior to its use, and there were reasonable and less-intrusive alternatives to the use of deadly force available to said Defendants.

23. Upon information and belief, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, were not responding to a serious or violent crime, the Defendants did not have information that PLAINTIFF had just committed or was about to commit a serious or violent crime and had no information that PLAINTIFF had just harmed or was threatening to harm any person or law enforcement officer.

24. On January 9, 2023, PLAINTIFF was fleeing police apprehension when he fell in front of an apartment complex gate. As he was attempting to stand up, Defendants pushed him into the gate, kicked him in the shoulder, stomped on his head, and then continued to punch and kick him, notwithstanding the fact that there were, at all times, four to five officers engaged in his apprehension.

25. The use of deadly force against PLAINTIFF by Defendants was excessive and unreasonable because immediately prior to and at the time of the use of deadly force: PLAINTIFF was not an immediate threat of death or serious bodily injury to any person; PLAINTIFF was not given a verbal warning that deadly force was going to be used; and Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES had reasonable, less-intrusive alternatives to the use of deadly force at the time

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

available to them, and failed to use those alternatives, and failed to exhaust those alternatives.

26.    At no point did PLAINTIFF have weapons of any kind in his hands. PLAINTIFF never reached for any weapons. PLAINTIFF never verbally threatened any officer during the encounter, and PLAINTIFF did not present a danger to the officers or anyone else throughout the police beating.

27.    While PLAINTIFF was not a threat to the officers or any other person and was unarmed, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES surrounded PLAINTIFF and began to beat him mercilessly.

28.    PLAINTIFF was subjected to unreasonable and excessive force, inflicted in conscious disregard of Plaintiff's rights when he was savagely beaten.

29.    As a result of the excessive and unreasonable force, PLAINTIFF suffered serious bodily injury, including a comminuted left anterior fracture of the third rib, a nondisplaced left anterior fracture of the fourth and fifth ribs, a subacute left anterior fracture of the fifth rib near the costochondral junction, a bilateral nasal bone fracture, and a chronic right orbital floor fracture. PLAINTIFF continues to suffer pain to this day.

30.    The use of force was excessive and objectively unreasonable under the circumstances, especially because PLAINTIFF did not pose an immediate threat to anyone.

31.    The conduct of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES were in deliberate indifference to, and in conscious disregard for PLAINTIFF'S rights.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

32. PLAINTIFF seeks damages for his past and future pain and suffering, including impairment, disfigurement, emotional distress related to his injuries, mental anguish, embarrassment, loss of quality of life, and any medical expenses under these claims. PLAINTIFF also seeks reasonable attorneys' fees and costs.

**FIRST CLAIM FOR RELIEF**

**Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)**

(By PLAINTIFF against DEFENDANTS BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES)

33. PLAINTIFF repeats and re-alleges each and every allegation of paragraphs 1 through 34, inclusive, as if fully set forth herein.

34. The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable detention in violation of their right to privacy. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

35. When Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES viciously attacked PLAINTIFF, he was not physically threatening any person, including Defendants.

36. Throughout the incident, PLAINTIFF presented no immediate threat to the safety of the officers or others, there were reasonable, less intrusive options available to Defendants, and PLAINTIFF never attempted to punch or kick any officer or any other persons. Thus, Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES used excessive and unreasonable force, including deadly force, against PLAINTIFF when they beat him and caused him serious bodily injury.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

37.    Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES caused various injuries herein by integrally participating or failing to intervene in the incident and by engaging in other acts and/or omissions around the time of the incident.   Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES' acts and omissions deprived PLAINTIFF of his right to be secure in his person against unreasonable searches and seizures as guaranteed to PLAINTIFF under the Fourth Amendment to the United States Constitution and applied to State Actors by the Fourteenth Amendment.

38.    As a direct result of the aforesaid acts and omissions of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, PLAINTIFF suffered great physical and mental injury, fear, and emotional distress related to his physical injuries, and loss of his earning capacity in an amount according to proof.

39.    The conduct of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES was in deliberate indifference to, and in conscious disregard of, PLAINTIFF'S rights.

40.    The conduct of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF and warrants the imposition of exemplary and punitive damages in an amount according to proof.

41.    Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES were acting under color of state law and within the course and scope of their employment as deputies for Defendant COUNTY.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

42.    PLAINTIFF seeks damages for his past and future pain and suffering, loss of enjoyment of life, medical expenses, and loss of earning capacity under this claim.

43.    PLAINTIFF also seeks attorneys' fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

### Municipal Liability – Ratification (42 U.S.C. § 1983)

(By PLAINTIFF against COUNTY; and DOE SUPERVISORS, inclusive)

44.    PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 45 of this Complaint with the same force and effect as if fully set forth herein.

45.    Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, acted under color of law.

46.    The conduct of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES was in deliberate indifference to, and in conscious disregard of PLAINTIFF'S rights.

47.    The acts of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, inclusive, PLAINTIFF of his particular rights under the United States Constitution.

48.    Upon information and belief, a final policymaker, acting under color of law, has a history of ratifying unreasonable uses of force, including deadly force.

49.    Upon information and belief, a final policymaker, acting under color of law, had final policymaking authority concerning the acts of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, acts and the bases for them.  Upon information and belief,

11

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

the final policymaker knew of and specifically approved of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, acts.

50.    On information and belief, COUNTY OF SAN BERNARDINO final policymakers, including DOE SUPERVISORS knew that at the time of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES' beating, PLAINTIFF never presented a risk of harm to an officer or anyone else and that PLAINTIFF was always unarmed during Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES' beating of PLAINTIFF.

51.    On information and belief, the official policies with respect to the incident are that deputies are not to use force against an individual unless the individual poses an immediate risk of bodily injury to the deputies or others.  The deputies' actions deviated from these official policies because PLAINTIFF did not pose an immediate threat of death or serious bodily injury to the involved deputies or anyone.

52.    On information and belief, Defendant COUNTY approved of the deputies' actions after a hearing presented by the deputies' legal counsel to DOE SUPERVISORS,  after which DOE SUPERVISOTS found the deputies' actions to be within the official policies of the SBCSD.  On information and belief, the basis for such approval was based on the deputies' self-serving statements that they feared PLAINTIFF presented a threat of harm to themselves or others, despite the plethora of evidence to the contrary, including evidence that PLAINTIFF was unarmed and never presented a risk of harm to the deputies or anyone else at the time Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, beat PLAINTIFF.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

53.    Upon information and belief, a final policymaker has determined that the acts of Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES were "within policy."

54.    The following are only a few examples of cases where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant COUNTY routinely ratifies such behavior:

(a) On April 9, 2015, a group of deputies from the San Bernardino County Sheriff's Department surrounded and beat Francis Jared Pusok despite the fact that he did not pose a threat to any officer or any member of the public. On information and belief, one of the deputies, Charles Foster, was convicted for the beating, but that conviction was later vacated, and Deputy Foster pled guilty to disturbing the peace. During closing argument in the trial, San Bernardino County Deputy District Attorney Robert Bulloch decried what he called a "culture of violence" within the San Bernardino County Sheriff's Department brought on by a "code of silence." On information and belief, despite a jury verdict finding Deputy Foster had committed assault under color of law, Deputy Foster was reinstated to the San Bernardino County Sheriff's Department. Deputy Foster was returned to full duty at the same pay rate.

(b) On June 18, 2016, a deputy with the San Bernardino County Sheriff's Department used excessive force in the arrest of Gregory Mann when the deputy tackled an unarmed Mann to the ground and repeatedly kneed him notwithstanding that

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

Mann had already surrendered. The deputy's attack continued after Mann was handcuffed as he continued to knee Mann and slammed him to the ground while Mann was handcuffed. On information and belief, the Sheriff's Deputy responsible for beating Mr. Mann was not suspended by the department or otherwise disciplined by the department after the department determined the deputy's actions were "within policy."

(c) In *Ranero v. County of San Bernardino*, case no. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries, including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(d) In *Archibald v. County of San Bernardino*, case no. 5:16-cv-01128, C.D. Cal., the plaintiffs, the parents of a 29-year-old mentally ill, unarmed man who was beat than shot and killed by a deputy working for the COUNTY, argued that the deputy detained and arrested the decedent without reasonable suspicion and probable cause and used excessive force, including deadly force, in the unlawful detention and arrest of decedent. The jury in that case returned a $33.5 million verdict against the COUNTY and deputy and found for the plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a

14

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

(e) On January 26, 2018, deputies with the San Bernardino County Sheriff's Department used excessive force on Gerardo Bernabe Vasquez. On information and belief, while arresting Mr. Vasquez, the deputies took him to the ground and placed him on his stomach. The deputies then punched Mr. Vasquez several times in the face and head and handcuffed Mr. Vasquez behind his back. After he had already been placed in handcuffs, the deputies kicked Mr. Vasquez several times in the face and head and at one point forcefully stomped on Mr. Vasquez's head while he was still lying on his stomach on the ground with his hands in handcuffs behind his back. On information and belief, the offending deputies were placed on paid administrative leave but were not suspended by the department or otherwise disciplined by the department after the department determined the deputies' actions were "within policy."

(f) In *Phillips, et al. v. County of San Bernardino, et al.*, case no. 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million with the family of a woman who was shot and killed by a deputy working for the COUNTY while driving in her vehicle despite not posing an immediate threat of death or serious bodily injury to the deputy or anyone else at the time of the shooting.

(g) In *Yepez v. County of San Bernardino, et al.,* case no. 5:21-cv-00123, C.D. Cal., COUNTY deputies responded to a call where a

15

man was standing in the street. After the man complied with all commands and lay on the ground, COUNTY deputies struck the man on the head, using handcuffs as a make-shift weapon, kneed him, tasered him without warning, struck him with a baton across his legs, and lower body, and kicked him with full force in the head. At all times, the man was complying with deputy commands, had no weapons in his hands, was making no furtive movements, and was surrounded by no less than five officers, each of whom had a weapon pointed at him. The COUNTY settled for $750,000.00 after it had ratified the deputies' conduct, found the arrest to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct. The COUNTY negligently retained the deputies following their savage beating.

55.    By reason of the aforementioned acts and omissions, PLAINTIFF has and will suffer past and future pain and suffering, loss of enjoyment of life, medical expenses, and loss of earning capacity.

56.    Accordingly, DEFENDANTS COUNTY and DOE SUPERVISORS are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

57.    PLAINTIFF also seeks attorneys' fees and costs of suit.

## THIRD CLAIM FOR RELIEF

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

(By PLAINTIFF against Defendants COUNTY and DOE SUPERVISORS)

58.    PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 59 of this Complaint with the same force and effect as if fully set forth herein.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

59. Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOES 1-10, were acting under the color of law and within the course and scope of their employment with Defendant COUNTY and SBCSD.

60. The acts of Defendants deprived PLAINTIFF of his particular rights under the United States Constitution as alleged herein.

61. The training policies of Defendant COUNTY were not adequate to train its deputies to handle the usual and recurring situations with which they must deal. This includes training with respect to tactics, the use of force, including deadly force, de-escalation techniques, controlling deputy emotions and fears, inappropriate scenarios in training that promote the use of unreasonable force, and continually assessing a situation to justify every use of force. In addition to failing to train deputies to safely handle obvious and recurring situations, Defendant COUNTY affirmatively chose a policy it knew was likely to lead to, and in fact had previously led to, deprivations of constitutional rights, including unreasonable seizures in violation of the Fourth Amendment.

62. Defendants COUNTY and DOE SUPERVISORS were deliberately indifferent to the obvious consequences of its failure to train its deputies adequately, including training with respect to tactics, the use of force, including deadly force, and de-escalation techniques.

63. The failures of Defendant COUNTY to provide adequate training caused the deprivation of PLAINTIFF'S rights by Defendants; that is, Defendants' failure to train is so closely related to the deprivation of PLAINTIFF'S rights as to be the moving force that caused the ultimate injury.

17

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

64.    On information and belief, Defendant COUNTY failed to train Defendants properly and adequately, including regarding the following:

   a. Not providing adequate time and resources for deputies to train when the training does exist, so that the deputies can rely on that training during incidents.

   b. Not enforcing the basic training standards, when they do exist, that are designed to prevent deputies from using excessive and unreasonable.

   c. Not adequately providing recurring training so that deputies do not lose necessary perishable skills, and not re-training deputies who have used force in the field.

   d. Effective communication to enable deputies to gain cooperation and voluntary compliance in stressful situations.

   e. Effective communication as a basic element to the use of force; the goal of which to gain voluntary compliance without resorting to physical force, especially deadly force.

   f. That the use of deadly force is the most serious decision a peace officer may ever have to make, and such a decision should be guided by the reverence for human life and used only when other means of control are unreasonable or have been exhausted.

   a. Reverence for life as the foundation on which the use of deadly force rests. Deadly force is always the last resort to be used in the direst circumstances. The authority to use deadly force is an awesome responsibility given to peace officers by the people who expect them to exercise that authority judiciously. In the law

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

enforcement/community partnership, the expectation that peace officers are self-disciplined and accountable.

b. Self-control as one of a peace officer's greatest assets in dealing with a person or a situation.

c. Unreasonable fear includes overreactions to true potential threats as well as reactions to unreal threats based on prejudice or poor application of experience.

d. Unreasonable fear can be responsible for inappropriate responses such as a failure to respond or responding inappropriately (using unreasonable force).

e. Unreasonable force occurs when the type, degree, and duration of force employed was neither necessary nor appropriate.

f. The community expects that its peace officers will use only reasonable amounts of force and only use deadly force when absolutely necessary. Likewise, it expects that someone, including peace officers, will intervene if reasonable force is exceeded.

g. Use of other techniques to the use of deadly force including but not limited to de-escalation, communication, conflict resolution, defensive tactics, less-lethal force, and use of time and distance.

h. That a deputies' subjective fear of future harm alone is insufficient as an imminent threat. An imminent threat is one that requires instant attention.

i. Training with respect to tactics.

j. Training with respect to assessing when it is appropriate to use force, including deadly force, and training on how much force is appropriate even when some force is appropriate.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

65.     Upon information and belief, the following are only a few examples of cases where involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant COUNTY failed to adequately train its deputies with regard to the use of force:

(a) On April 9, 2015, a group of deputies from the San Bernardino County Sheriff's Department surrounded and beat Francis Jared Pusok despite the fact that he did not pose a threat to any officer or any member of the public. On information and belief, one of the deputies, Charles Foster, was convicted for the beating, but that conviction was later vacated, and Deputy Foster pled guilty to disturbing the peace. During closing argument in the trial, San Bernardino County Deputy District Attorney Robert Bulloch decried what he called a "culture of violence" within the San Bernardino County Sheriff's Department brought on by a "code of silence." On information and belief, despite a jury verdict finding Deputy Foster had committed assault under color of law, Deputy Foster was reinstated to the San Bernardino County Sheriff's Department. Deputy Foster was returned to full duty at the same pay rate.

(b) On June 18, 2016, a deputy with the San Bernardino County Sheriff's Department used excessive force in the arrest of Gregory Mann when the deputy tackled an unarmed Mann to the ground and repeatedly kneed him notwithstanding that Mann had already surrendered.  The deputy's attack continued after Mann was handcuffed as he continued to knee

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

Mann and slammed him to the ground while Mann was handcuffed. On information and belief, the Sheriff's Deputy responsible for beating Mr. Mann was not suspended by the department or otherwise disciplined by the department after the department determined the deputy's actions were "within policy."

(c) In *Ranero v. County of San Bernardino*, case no. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries, including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(d) In *Archibald v. County of San Bernardino*, case no. 5:16-cv-01128, C.D. Cal., the plaintiffs, the parents of a 29-year-old mentally ill, unarmed man who was beat than shot and killed by a deputy working for the COUNTY, argued that the deputy detained and arrested the decedent without reasonable suspicion and probable cause and used excessive force, including deadly force, in the unlawful detention and arrest of decedent. The jury in that case returned a $33.5 million verdict against the COUNTY and deputy and found for the plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man,

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

for which the COUNTY settled with the victim prior to any litigation.

(e) On January 26, 2018, deputies with the San Bernardino County Sheriff's Department used excessive force on Gerardo Bernabe Vasquez. On information and belief, while arresting Mr. Vasquez, the deputies took him to the ground and placed him on his stomach. The deputies then punched Mr. Vasquez several times in the face and head and handcuffed Mr. Vasquez behind his back. After he had already been placed in handcuffs, the deputies kicked Mr. Vasquez several times in the face and head and at one point forcefully stomped on Mr. Vasquez's head while he was still lying on his stomach on the ground with his hands in handcuffs behind his back. On information and belief, the offending deputies were placed on paid administrative leave but were not suspended by the department or otherwise disciplined by the department after the department determined the deputies' actions were "within policy."

(f) In *Phillips, et al. v. County of San Bernardino, et al.*, case no. 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million with the family of a woman who was shot and killed by a deputy working for the COUNTY while driving in her vehicle despite not posing an immediate threat of death or serious bodily injury to the deputy or anyone else at the time of the shooting.

(g) In *Yepez v. County of San Bernardino, et al.*, case no. 5:21-cv-00123, C.D. Cal., COUNTY deputies responded to a call where a man was standing in the street. After the man complied with all

22

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

commands and lay on the ground, COUNTY deputies struck the man on the head, using handcuffs as a make-shift weapon, kneed him, tasered him without warning, struck him with a baton across his legs, and lower body, and kicked him with full force in the head. At all times, the man was complying with deputy commands, had no weapons in his hands, was making no furtive movements, and was surrounded by no less than five officers, each of whom had a weapon pointed at him. The COUNTY settled for $750,000.00 after it had ratified the deputies' conduct, found the arrest to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct. The COUNTY negligently retained the deputies following their savage beating.

66.    By reason of the aforementioned acts and omissions, PLAINTIFF has suffered past and future pain and suffering, loss of enjoyment of life, and permanent injury.

67.    Upon information and belief, Defendant COUNTY, through its officials, had either actual or constructive knowledge of the deficient training policies, practices, and customs alleged herein. Despite having knowledge as stated herein, these Defendant COUNTY officials condoned, tolerated, and through actions and inactions, thereby ratified such deficient training. In doing so, Defendant COUNTY officials acted with deliberate indifference to the foreseeable effects and consequences of such deficient training with respect to the constitutional rights of PLAINTIFF and other similarly situated individuals.

68.    Through its deficient training, Defendant COUNTY officials acted with intentional, reckless, and callous disregard for the life and rights of PLAINTIFF. Furthermore, the deficient training tolerated by Defendant COUNTY

23

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

and its officials was affirmatively linked to and was a significantly influential force behind the injuries of PLAINTIFF.

69. Accordingly, Defendant COUNTY is liable to PLAINTIFF for compensatory damages under 42 U.S.C. §1983.

70. The conduct of Defendant DOE SUPERVISORS in condoning, maintaining, and providing deficient training was willful, wanton, malicious, and done with reckless disregard for the rights and safety of PLAINTIFF, and therefore warrants the imposition of exemplary and punitive damages as to the Defendant DOE SUPERVISORS.

71. PLAINTIFF seeks compensatory and punitive damages.

72. PLAINTIFF also seeks reasonable statutory attorneys' fees and costs

## FOURTH CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Custom or Policy (42 U.S.C. § 1983)**

(By PLAINTIFF against Defendants COUNTY and DOE SUPERVISORS)

73. PLAINTIFF repeats and re-alleges each and every allegation in paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

74. Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, DOE DEPUTIES, and DOE SUPERVISORS were acting under the color of state law and within the course and scope of their employment with Defendant COUNTY and SBCSD.

75. Defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of Defendant COUNTY.

76. On information and belief, Defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with PLAINTIFF'S harm.

24

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

77. Upon information and belief, in addition to those policies alleged above, Defendants COUNTY and DOE SUPERVISORS maintained, inter alia, the following unconstitutional customs, practices, and policies:

    a. Using excessive force, including excessive deadly force.

    b. Providing inadequate training regarding the use of deadly force.

    c. Employing and retaining as employees Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, who Defendant COUNTY at all times material herein knew or reasonably should have known used excessive force.

    d. Inadequately supervising, training, controlling, assigning, and disciplining COUNTY deputies and other personnel, including Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, who Defendant COUNTY knew or in the exercise of reasonable care should have known had the propensities to use excessive force.

    e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by COUNTY officials, including Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES.

    f. Failing to adequately discipline COUNTY deputies, including Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES, for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

encouraging misconduct.

g. Announcing that unjustified uses of force are "within policy," including beatings that were later determined in court to be unconstitutional.

h. Even where beatings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved.

i. Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which officials do not report other officials' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another official while following the code, the official being questioned will claim ignorance of the other officials' wrongdoing.

j. Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of law enforcement uses of force, including by failing to discipline, retrain, investigate, terminate, and recommend officials for criminal prosecution who participate in unreasonable uses of force.

k. Upon information and belief, COUNTY, including but not limited to SBCSD, has an unofficial policy, practice, and/or custom of finding almost all—if not all—of its deputy-involved uses of force to be within policy, of not disciplining its deputies involved in uses of force, not retraining or firing deputies involved in unconstitutional uses of force, and of not recommending criminal charges against their deputies involved in excessive and

26

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

unreasonable deputy-involved uses of force. As a result, deputies involved in excessive uses of deadly force are allowed back to patrol the streets even though Defendant COUNTY knew or should have known that these deputies have a propensity for using excessive deadly force against the citizens that the deputies are supposed to protect and serve, especially against minorities and the mentally ill.

l. Upon information and belief, as a result of Defendant COUNTY policy, custom, and/or practices, SBCSD deputies know that if they use deadly excessive force against someone, they will not be disciplined, and their use of force will be found within policy, which results in a significant number of COUNTY deputies being involved in numerous unconstitutional uses of force. This policy, custom, and/or practice was established by supervising and managerial employees of COUNTY, specifically, those employees tasked with determining whether deputy-involved shootings fall within policy, those employees responsible for disciplining, retraining, and firing employees who use excessive force, and for those employees responsible for making recommendations of criminal charges being filed against deputies who use excessive deadly force; and

m. Upon information and belief, this policy, custom, and/or practice is long-lasting and persistent and existed well before PLAINTIFF was savagely beaten by Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOE DEPUTIES. This policy, custom and/or practice was established so that COUNTY deputies do not bear the responsibility for the people they use

27

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

excessive deadly force against. This policy, custom, and/or practice exists so that the public does not have such a negative perception of COUNTY and its sheriff's department and so that COUNTY can avoid the repercussions associated with its deputies' use of excessive deadly force against citizens, including negative publicity, avoiding criminal prosecution, and avoiding civil liability. A significant reason that this policy, custom, and/or practice was established was to avoid COUNTY being liable, under a theory of vicarious liability, for the use of excessive and unreasonable deadly force by its employees. In other words, there is a large financial incentive for COUNTY to erroneously determine that most, if not all, of its deputies' uses of deadly force are within policy. If COUNTY, through its policymakers and supervisors, would admit that their deputies were at fault for using excessive and unreasonable deadly force, then COUNTY is aware of how much they would have to pay for any associated litigation.

78. Defendants COUNTY and DOE SUPERVISORS, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFF and other similarly situated individuals.

79. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, DOE SUPERVISORS acted with intentional, reckless, and callous disregard for the life of PLAINTIFF and for PLAINTIFF'S

28

constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOE SUPERVISORS were affirmatively linked to and were a significantly influential force behind the injuries of PLAINTIFF.

80.     Based on information and belief, the following are only a few examples of cases evidencing Defendant COUNTY'S unconstitutional policies, where the involved deputies were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant COUNTY routinely ratifies such behavior and maintains a practice of allowing such behavior:

(a) On April 9, 2015, a group of deputies from the San Bernardino County Sheriff's Department surrounded and beat Francis Jared Pusok despite the fact that he did not pose a threat to any officer or any member of the public. On information and belief, one of the deputies, Charles Foster, was convicted for the beating, but that conviction was later vacated, and Deputy Foster pled guilty to disturbing the peace. During closing argument in the trial, San Bernardino County Deputy District Attorney Robert Bulloch decried what he called a "culture of violence" within the San Bernardino County Sheriff's Department brought on by a "code of silence." On information and belief, despite a jury verdict finding Deputy Foster had committed assault under color of law, Deputy Foster was reinstated to the San Bernardino County Sheriff's Department. Deputy Foster was returned to full duty at the same pay rate.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

(b) On June 18, 2016, a deputy with the San Bernardino County Sheriff's Department used excessive force in the arrest of Gregory Mann when the deputy tackled an unarmed Mann to the ground and repeatedly kneed him notwithstanding that Mann had already surrendered.  The deputy's attack continued after Mann was handcuffed as he continued to knee Mann and slammed him to the ground while Mann was handcuffed.  On information and belief, the Sheriff's Deputy responsible for beating Mr. Mann was not suspended by the department or otherwise disciplined by the department after the department determined the deputy's actions were "within policy."

(c) In *Ranero v. County of San Bernardino*, case no. 5:16-cv-02655, C.D. Cal., the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries, including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, found the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

(d) In *Archibald v. County of San Bernardino*, case no. 5:16-cv-01128, C.D. Cal., the plaintiffs, the parents of a 29-year-old mentally ill, unarmed man who was beat than shot and killed by a deputy working for the COUNTY, argued that the deputy detained and arrested the decedent without reasonable suspicion and probable cause and used excessive force, including deadly force, in the unlawful detention and arrest of decedent. The jury in that case returned a $33.5 million verdict against the COUNTY and

30

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

deputy and found for the plaintiffs on all claims. The COUNTY ratified the deputy's conduct, found the detention and shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputy for his conduct. The COUNTY negligently retained the deputy following this shooting, which resulted in a subsequent shooting by the same deputy of another unarmed man, for which the COUNTY settled with the victim prior to any litigation.

(e) On January 26, 2018, deputies with the San Bernardino County Sheriff's Department used excessive force on Gerardo Bernabe Vasquez. On information and belief, while arresting Mr. Vasquez, the deputies took him to the ground and placed him on his stomach. The deputies then punched Mr. Vasquez several times in the face and head and handcuffed Mr. Vasquez behind his back. After he had already been placed in handcuffs, the deputies kicked Mr. Vasquez several times in the face and head and at one point forcefully stomped on Mr. Vasquez's head while he was still lying on his stomach on the ground with his hands in handcuffs behind his back. On information and belief, the offending deputies were placed on paid administrative leave but were not suspended by the department or otherwise disciplined by the department after the department determined the deputies' actions were "within policy."

(f) In *Phillips, et al. v. County of San Bernardino, et al.*, case no. 5:18-cv-02532, C.D. Cal., the COUNTY settled for $2.1 million with the family of a woman who was shot and killed by a deputy

31

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

working for the COUNTY while driving in her vehicle despite not posing an immediate threat of death or serious bodily injury to the deputy or anyone else at the time of the shooting.

(g) In *Yepez v. County of San Bernardino, et al.,* case no. 5:21-cv-00123, C.D. Cal., COUNTY deputies responded to a call where a man was standing in the street. After the man complied with all commands and lay on the ground, COUNTY deputies struck the man on the head, using handcuffs as a make-shift weapon, kneed him, tasered him without warning, struck him with a baton across his legs, and lower body, and kicked him with full force in the head. At all times, the man was complying with deputy commands, had no weapons in his hands, was making no furtive movements, and was surrounded by no less than five officers, each of whom had a weapon pointed at him. The COUNTY settled for $750,000.00 after it had ratified the deputies' conduct, found the arrest to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct. The COUNTY negligently retained the deputies following their savage beating.

81. By reason of the aforementioned acts and omissions, PLAINTIFF has suffered past and future pain and suffering, loss of enjoyment of life, and permanent injury.

82. Accordingly, Defendant COUNTY is liable to PLAINTIFF for compensatory damages under 42 U.S.C. §1983.

83. The conduct of the Defendant DOE SUPERVISORS in condoning, maintaining, and providing these longstanding unconstitutional policies, customs, and/or practices was willful, wanton, malicious, and done with reckless disregard

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

for the rights and safety of PLAINTIFF, and therefore warrants the imposition of exemplary and punitive damages as to the Defendant DOE SUPERVISORS.

84.     PLAINTIFF seeks compensatory and punitive damages.

85.     PLAINTIFF also seeks reasonable statutory attorneys' fees and costs.

PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, GREGORY HAMIL, requests entry of judgment in his favor against COUNTY OF SAN BERNARDINO and Defendants BYRNE, NICASSIO, NERENBERG, COLLINS, ROSE, and DOES 1-10, inclusive, as follows:

1. For compensatory damages, according to proof at trial;

2. For punitive and exemplary damages against the individual defendants in an amount to be proven at trial;

3. For reasonable attorney's fees including litigation expenses;

4. For costs of suit and interest incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

Dated: September 20, 2024        **GRECH, PACKER, & HANKS**

By:        /s/      *Trenton C. Packer*
Trenton C. Packer, Esq.
*Attorneys for Plaintiff*

34
PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby submits this demand that this action be tried in front of a jury.

Dated: September 20, 2024          **GRECH, PACKER, & HANKS**

By:      _/s/     Trenton C. Packer_
Trenton C. Packer, Esq.
*Attorneys for Plaintiff*

35
PLAINTIFF HAMIL'S COMPLAINT FOR DAMAGES